UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**BEDFORD BLYTHE**
    Plaintiff

v.                                                                                                            **No. 1:08CV-00104-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Mary Burchett-Bower. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 16, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 24, 2002, by administrative law judge (ALJ) T. Christopher Heavrin. In support of his decision denying Title II and Title XVI benefits, Judge Heavrin entered the following numbered findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease and depression are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

  5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

  6. The claimant has the residual functional capacity to perform low stress simple 1-2 step job tasks and instructions with little or no contact with coworkers or the general public and no twisting, stooping, crouching and rarely climbing ladders or stairs.

  7. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

  8. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

  9. The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

  10. The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

  11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

  12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as quality controller, assembler, packer/assembler with cumulative totals of 6,000 jobs in Kentucky and 250,000 to 500,000 in the nation.

  13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 31-31A).

## Governing Legal Standards

  1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other

financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

The plaintiff's central contention upon judicial review is that 1) the medical opinions of his treating physician, William Carter, limit him to no more than "sedentary" work, 2) said medical opinions are entitled to controlling weight, and therefore 3) the record adequately establishes that he is disabled pursuant to Rule 201.09 of Appendix 2 of the regulations, the so-called medical-vocational guidelines, or grids. For the reasons set forth below, the magistrate judge concludes that the argument is persuasive. Therefore, we shall recommend a judicial award of benefits in this case.

**Dr. Carter's medical opinions limit the plaintiff to "sedentary" work**

On March 17, 2004, Dr. Carter completed the Physical Residual Functional Capacity [RFC] Questionnaire (AR, pp. 156-159). Among other things, Dr. Carter found that the plaintiff's degenerative lumbar disc disease with radiculopathy dictates that he can "never" stoop and that he can stand/walk for less than 2 hours total in an 8-hour working day (AR, pp. 158-159).

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The lifting requirements of most light jobs require an ability to occasionally stoop. Social Security Ruling (SSR) 83-10. In addition, relatively few unskilled light jobs are performed in a seated position. Id. Generally, they "require standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id. The magistrate judge concludes that Dr. Carter's medical opinions are incompatible with the requirements of "light" work and, at most, they would permit the performance of "sedentary" work.

**Dr. Carter's medical opinions are entitled to controlling weight**

A treating physician's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The magistrate judge concludes that Dr. Carter's medical opinions are well-supported by objective clinical data. Specifically, Dr. Carter diagnosed the plaintiff as suffering from degenerative disc disease of the lumbar spine with lumbar radiculopathy as evidenced by the results of an MRI of the lumbar spine conducted in November of 2003, which revealed a L5-S1 disc bulging with annular tear (AR, pp. 112 and 160).

The undersigned further concludes that there is no probative medical opinion contrary to Dr. Carter's in the administrative record. Besides that of Dr. Carter, the administrative record contains only three medical source opinions bearing upon the issue of the plaintiff's physical RFC in light of his degenerative disc disease, L5-S1 disc bulging with annular tear, and lumbar radiculopathy, to-wit:

1. On November 21, 2003, H. Barret Lessenberry, M.D., performed a consultative orthopedic evaluation of the plaintiff. Dr. Lessenberry's narrative report is at AR, p. 126. The undersigned concludes that Dr. Lessenberry's report does not attempt to assess any specific limitations or capacities.

2. On February 12, 2004, H. T. Anzures acknowledged that the "MRI showed disc bulging at the L5-S1 level" but nevertheless opined that the plaintiff's "back, hip, and leg" condition is non-severe (AR, p. 154). However, in a notation dated February 12, 2004, Dr. Anzures appears to make a request or suggestion to some unknown individual working for the Commissioner, to-wit (AR, p. 155):

> Please conduct a doctor to doctor phone call with Dr. Mark Carter in order to learn more about his limitations. The phone number is (270) 487-6161. Or is the information in the file sufficient?

This notation causes the magistrate judge to discount Dr. Anzures' opinion of a non-severe impairment as he acknowledges that he is not aware of the plaintiff's functional limitations. Furthermore, the ALJ's written decision does not indicate reliance upon Dr. Anzures' opinion.

 3. On April 15, 2004, Dr. Rawlings apparently concurred with Dr. Anzures' opinion of a non-severe impairment (AR, p. 171).

The magistrate judge concludes that the Dr. Carter's medical opinions that limit the plaintiff to no more than "sedentary" work are well-supported by objective medical data and are not inconsistent with any other probative medical evidence in the administrative record . Therefore, they are entitled to controlling weight.

### The plaintiff is disabled pursuant to Grid Rule 201.09

 The plaintiff was born on May 5, 1952 (AR, p. 51). Therefore, he was 53 years old, or "closely approaching advanced age" as contemplated by 20 C.F.R. §§ 404.1563(d) and 416.963(d) (i.e., aged 50-54), on May 25, 2005, at the time of the Commissioner's final decision herein. In light of the foregoing age classification, the magistrate judge concludes that the ALJ's reference to Grid Rule 202.17 in Finding No. 12 was erroneous inasmuch as that rule contemplates a "younger" individual between the ages of 45 and 49. The ALJ should have cited Grid Rule 202.10 ("closely approaching advanced age"). The Commissioner has acknowledged the error (Docket Entry No. 16, p. 13).

The Commissioner is correct that the error is insignificant so long as the individual is able to perform "light" work inasmuch as both rules direct an ultimate finding of "not disabled." However, the difference is critical if, as we have concluded in this case, the record adequately establishes that the plaintiff has a maximum exertional capacity for "sedentary" work. The rule corresponding to Grid Rule 202.10 for "sedentary" work is Rule 201.09, and Rule 201.09 directs an ultimate finding of "disabled." The magistrate judge concludes that the record adequately establishes the plaintiff's entitlement to benefits pursuant to a direct application of Grid Rule 201.09.

### The ALJ's finding that the plaintiff can perform "light" work

The ALJ declined to give controlling weight to Dr. Carter's medical opinions that limit the plaintiff to "sedentary" work because they were found to be "inconsistent with the paucity of medical treatment before or after filing for disability benefits" (AR, p. 29). In light of the MRI evidence and the lack of any probative medical source opinion contrary to that of Dr. Carter, the magistrate judge concludes that the ALJ's rationale was unpersuasive and insubstantial. However, even if the ALJ properly declined to give Dr. Carter's opinions, the fact remains that the ALJ's Finding No. 11 that the plaintiff is able to perform "light" work is not supported by any probative medical evidence in the administrative record.

There must be some medical support for the ALJ's physical RFC finding because, as a lay individual, an ALJ is "simply not qualified to interpret raw medical data [e.g., the MRI results at AR, p. 112] in functional terms." *Nguyen v. Commissioner*, 172 F.3d 31, 35 (1st Cir., 1999). Thus, in *Elliott v. Apfel*, 2002 WL 89668, the Sixth Circuit explained as follows:

> When we review the hypotheticals posed by an ALJ to a vocational expert, we ask if evidence in the record supports the hypothetical. If at least one doctor's opinion or report would support the question, we will not conclude that the questions were erroneous. See *Hardaway v. Secretary*, 823 F.2d 922, 927-28 (6th Cir., 1987)

> ("[Claimant] contends that there is no evidence to support a conclusion that he can perform sedentary work. However, at least one doctor did state that [claimant] could perform sedentary work. Therefore, there is some evidence in the record to this effect. Consequently, the hypothetical questions were not erroneous.").

Similarly, in *Boulton v. Astrue*, 2008 WL 474410, this court held that:

> [A] "hypothetical question is correct [only] if at least one doctor substantiates the information contained therein." *Godwin v. Secretary*, 1995 WL 871199 (E.D.Mich.). As indicated above, no doctor opined that the plaintiff can perform "medium" work. The ALJ's finding that the plaintiff can perform "medium" work appears to have been based solely upon the ALJ's own lay medical opinion.

The magistrate judge concludes that, because there is no medical source opinion in support of the ALJ's finding that the plaintiff can perform "light" work, at least, a remand for further evaluation of the medical evidence is required in this case.

### Some of Dr. Carter's opinions were not "medical opinions"

For purposes of the foregoing analysis, we have treated Dr. Carter's opinion that the plaintiff can "never" stoop and that he can stand/walk for less than 2 hours total in an 8-hour working day as a "medical opinion" as contemplated by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). In addition, to these medical opinions, Dr. Carter opined as follows (AR, pp. 158-160):

1. During an 8-hour working day, the plaintiff can sit for no more than 4 hours total.

2. He requires at least 9 30-minute breaks.

3. He requires waist-level elevation of his legs 100% of the time.

4. His attention and concentration are frequently impaired.

5. His depression and anxiety render him incapable of even "low stress" jobs.

6. He is "totally disabled."

The magistrate judge concludes that the foregoing opinions do not rise to the level of a "medical opinion." Rather, they are "medical source opinions on issues reserved to the Commissioner," e.g., opinions that are tantamount to a "statement by a medical source that you are disabled or unable to work" or an opinion that would "direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). Such opinions are entitled to no "special significance." Id.

### The ALJ's finding that the plaintiff's psoriasis was non-severe

The plaintiff argues that "the ALJ errs in failing to find Mr. Blythe's psoriasis [to be] 'severe'" (Docket Entry No. 12, p. 2). A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs." 20 C.F.R. §§ 404.1521 and 416.921. Basic work activities include things such as walking, standing, sitting, and lifting. The ALJ found that the plaintiff's psoriasis is "non-severe as [it] does not affect ability to perform basic work related activities" (AR, p. 28). At the second step of the sequential evaluation process, the burden of proof is upon the claimant. The magistrate judge concludes that the plaintiff has failed to point the court to any evidence in the administrative record that his psoriasis significantly limits his ability to perform basic work activities. Therefore, the ALJ's finding that his psoriasis is non-severe is supported by substantial evidence.

Alternatively, the undersigned finds that, to the extent the plaintiff's psoriasis does impact upon his ability to perform basic work activities, the plaintiff has failed to show that the impact is in excess of the limitations contemplated by the ALJ's RFC, Finding No. 6, and/or the controlling vocational hypothetical at AR, p. 250. Therefore, any error was harmless. See Varley, supra, and

11

*Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir., 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error").

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for calculation and payment of past-due Title II and/or Title XVI benefits based upon his applications for benefits filed in October of 2003, and his alleged onset of disability in April of 2000.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).